## HAWAIIAN SUGAR COMPANY *v.* CHARLES T. WILDER, TAX ASSESSOR FOR THE FIRST TAXATION DIVISION, TERRITORY OF HAWAII.

### No. 1328.

SUBMISSION UPON AGREED STATEMENT OF FACTS.
REHEARING.

ARGUED MARCH 21, 1922.                    DECIDED APRIL 1, 1922.

COKE, C. J., KEMP AND EDINGS, JJ.

TAXATION—*depreciation or exhaustion of leasehold—deduction from income.*

Where a leasehold is acquired prior to the effective date of the taxing act, to wit, April 27, 1917, the capital sum to be replaced by amortization is the fair market value of the lease at the date of the act.

SAME—*same—same.*

The value of the lease should be established as of the date the act went into effect and the sum thus ascertained should be amortized in such an amount annually so that at the end of the life of the lease the entire value thus found should be restored to capital.

SAME—*same—same—improvements on leasehold.*

In determining the fair and reasonable value of the leasehold it will not be proper to take into account buildings and other improvements placed thereon and in respect to which depreciation is deducted annually from gross income independently of the lease.

SAME—*same—same—basis of value—federal rule.*

Under the federal rule the burden is upon the taxpayer to establish the basis for amortization of the leasehold to the satisfaction of the tax assessor and the claim for amortization must be complete and comprehensive in all respects.

OPINION OF THE COURT BY COKE, C. J.

The Hawaiian Sugar Company and the tax assessor through their respective counsel interposed motions for a rehearing of certain phases of our former opinion herein

in reference to "Depreciation of Leasehold." These motions were granted to the extent that we have reheard the case in respect to the time or times at which the value of the leasehold in question should be taken or determined for the purpose of ascertaining the annual amount deductible from gross income on account of exhaustion of the leasehold and also in arriving at the proper valuation to be placed upon the leasehold in order to amortize the capital asset represented by it. This feature of the case has been very elaborately reargued.

Counsel for the tax assessor maintain that the depreciation allowable should be ascertained on the basis of the actual cost of the lease to the taxpayer, to wit, $50,000; that the statute contemplates only a loss actually sustained, and in the case of the present lease purchased by the taxpayer, its loss actually sustained or incurred cannot exceed the amount actually paid by the taxpayer for the lease, to wit, $50,000, and that because the lease was originally for the term of fifty years and much of that term has already expired, the sum to be allowed for exhaustion should be apportioned accordingly. They urge that to amortize a wasting capital asset the purpose of the law of amortization is to maintain the capital of the concern and that because in this case the company expended only the sum of $50,000 for the purchase of the lease it cannot be permitted to amortize a greater sum. Counsel for the company on the other hand urge the adoption of the rule promulgated by the federal treasury department, that is to say, where, as in this case, the lease was acquired prior to the effective date of the act, to wit, April 27, 1917, the capital sum to be replaced by amortization is the fair market value of the lease at the date of the act. Our former holding is that the value of the lease should be ascertained at that date and then reappraised annually and each taxation period should be dealt

with separately. We have through inadvertence said that the value of the lease at the end of the taxation period instead of at the beginning should control. This is erroneous. The value of course of the lease at the beginning of the taxation period should govern.

There is much logic in the position maintained by counsel for the assessor, but we think to adopt their views would be to ignore the decision in *Doyle* v. *Mitchell,* 247 U. S. 179. In fact the position of counsel for the tax assessor in this case is the same as was maintained by counsel for the government in the *Doyle-Mitchell* case—a position which the Supreme Court of the United States refused to approve. In that case the taxpayer acquired timber lands in 1903 and paid for them at a valuation equivalent to $20 per acre. Owing to increases in the market price of stumpage the market value of the timber land on December 31, 1908 (the date at which the act went into effect), had become approximately $40 per acre. The commissioner of internal revenue allowed a deduction of the cost of the timber in 1903 but refused to allow the difference between that cost and the fair market value of the timber on December 31, 1908, to wit, $40 per acre. The court in passing upon the controversy thus presented makes use of the following language: "When the act took effect plaintiff's timber lands, with whatever value they then possessed, were a part of its capital assets and subsequent change of form by conversion into money did not change the essence. Their increased value since purchase, as that value stood on December 31, 1908, was not in any proper sense the result of the operation and management of the business or property of the corporation while the act was in force." This language means that where the property is acquired prior to the date of the act the initial cost is ignored and the actual value of the asset at that date is substituted—a value which of

course may be greater or may be less than the first cost. It is true that in the *Doyle-Mitchell* decision the court was dealing with an excise, and not an income, tax law, yet the reasoning of that opinion has direct application to the question now before us.

We are strongly inclined to the view that the plan announced by us in our former opinion is the fairest to both the government and the taxpayer yet we realize that we were breaking new ground in this modern field of jurisprudence and we have concluded with reluctance to now recede from our former position and adopt the federal rule as contended for by counsel for the taxpayer, that is to say, that the value of the leasehold herein should be established as of the date the taxing act went into effect, to wit, April 27, 1917, and that the sum thus ascertained should be amortized in such an amount annually so that at the end of the life of the lease the entire value thus found should be restored to capital. In determining the fair and reasonable value of the leasehold it will not be proper to take into account buildings and other improvements placed thereon and in respect to which depreciation is deducted annually from gross income independently of the lease in question.

There is nothing, however, in the record before us which would indicate that the fair market value of the leasehold as of April 27, 1917, has ever been ascertained and it follows that no judgment in respect to this phase of the submission can be made by this court. Under the federal rule the burden is upon the taxpayer to establish the basis for amortization of the leasehold to the satisfaction of the tax assessor and the claim for amortization must be complete and comprehensive in all respects. (Holmes, Fed. Income Tax, pp. 681, 712.)

*Frear, Prosser, Anderson & Marx; Robertson & Castle;*

*Smith, Warren & Stanley* and *Henry Holmes* for the taxpayer.

*H. Irwin,* Attorney General, and *Perry & Matthewman* for the tax assessor.